IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JERMAINE BELL,                    \*
            Plaintiff
                    \*
   v.

BUREAU OF ALCOHOL, TOBACCO,       \*
AND FIREARMS,
           Defendant        \*

---------------------------------/

Case: 1:17-cv-01221     (I-Deck)
Assigned To : Cooper, Christopher R.
Assign. Date : 6/15/2017
Description: FOIA/Privacy Act

## F.O.I.A. COMPLAINT PURSUANT TO 5 U.S.C. § 552

Plaintiff, Jermaine Bell, pro se, brings this action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Plaintiff respectfully moves the District Court to enjoin the Bureau of Alcohol, Tobacco, and Firearms ("ATF") ("Defendant") from withholding information and order the production of any records that have been improperly denied to the requester. The Plaintiff proffers the following in support thereof:

### I. JURISDICTIONAL STATEMENT

This Court's jurisdiction is invoked pursuant to 5 U.S.C. § 552(a)(4)(B) which provides in pertinent part:

> On complaint, the district court of the United States in the district
> in which the complainant resides, or has his principal place of
> business, or in which the agency records are situated, or in the



JUN 1 5 2017

District of Columbia, has jurisdiction to enjoin the agency
from withholding agency records and to order the production
of any agency records improperly withheld from the complainant.

Id. 5 U.S.C. § 552(a)(4)(B).

## II. STATEMENT OF FACTS

On August 21, 2016, Plaintiff filed a Freedom of Information Act
request to Defendants' seeking the disclosure of all evidence and case
file in regards to the:

- May 28, 2001, homicide of Kenyatta Harris in Baltimore, Maryland

- June 26, 2001, homicide of Angelo Stringfellow in Baltimore, Mary-
land

- November 26, 2001, homicide of Torrence Johnson in Baltimore,
Maryland

- pertaining to 1998 investigation relating to Kenyatta Harris
stemming from a homicide of Damien Burrell

- pertaining to 302 reports relating to task force that involved
any/all Baltimore City Police Officers

Id.

On October 24, 2016, the Defendant's denied Plaintiff's FOIA request
"in full" asserting that the "investigation relating to a homicide is still
open," and therefore is exempt pursuant to 5 U.S.C. § 552(b)(7)(A) because
it concerns an ongoing investigation. Id.

Plaintiff filed a timely appeal to the U.S. Department of Justice,
Office of Information Policy ("OIP"). The appeal challenged the invocation

-2-

of 5 U.S.C. § 552(b)(7)(A) as invalid. Id. On January 30, 2017, the OIP
denied Plaintiff's appeal concluding that the "ATF properly withheld this
information in full because it is protected from disclosure under the FOIA
pursuant to 5 U.S.C.  § 552(b)(7)(A) and it is reasonably forseeable that
disclosure of this information would harm the interest protected by this
provision. This provision concerns records or information compiled for law
enforcement purposes the release of which could reasonably be expected to
interfere with enforcement proceedings." Id. (See Joint Appendix @ A & B).


### III. LEGAL STANDARD

The Freedom of Information Act is premised on the notion than an
informed citizenry is "vital to the functioning of a democratic society,
needed to check against corruption and to hold the governors accountable
to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242
(1978). The Act embodies "a general philosophy of full agency disclosure."
U.S. Dep't of Defense v. FLRA, 510 U.S. 487, 494 (1994). "[D]isclosure,
not secrecy, is the dominant objective of [FOIA]." Dep't of the Air Force
v. Rose, 425 U.S. 352, 361 (1976). At the same time, the statute represents
a "balance [of] the public's interest in governmental transparency against
legitimate governmental and private interest that could be harmed by release
of certain types of information." United Techs. Corp., Pratt & Whitney Div.
v. United States DOD, 601 F.3d 557, 559 (D.C. Cir 2010) (internal quotation
marks and citations omitted). Reflecting that balance, the government may
invoke nine statutory exemptions to withhold records from public disclosure.

See 5 U.S.C. §§ 552(b)(1)-(9). Because of the FOIA's presumption if favor of
public disclosure, these "exemptions are ... narrowly construed." F.B.I. v.
Abramson, 456 U.S. 615, 630 (1982). The agency invoking an exemption has
the burden "to establish that the requested information is exempt." Fed.
Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill, 443 U.S. 340, 352 (1979).
Because the focus  of FOIA is "information, not documents ... an agency
cannot justify withholding an entire document simply by showing that it
contains some exempt material." Krikorian v. Dep't of State, 984 F.2d 461,
467 (D.C. Cir. 1993) (citation and internal quotation marks omitted). Instead,
FOIA requires that federal agencies provide to a requester all non-exempt
information that is "reasonably segregable" from, 5 U.S.C.  § 552(b) - that
is, not "inextricably intertwined with," MeadData Central, Inc. v. United
States Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977) - exempt infor-
mation.

## IV. DISCUSSION

### (i) The Defendant erred in invoking Exemption (b)(7)(A) as a basis to withhold the information requested in Plaintiff's FOIA request

FOIA exemption 7(A) shields from disclosure "records or information
compiled for law enforcement purposes, but only to the extent that the
production of such law enforcement records or information [] could reasonably
be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).
To justify withholding documents under this exemption, "the DOJ must []
demonstrate that 'disclosure (1) could reasonably be expected to interfere

with (2) enforcement proceedings that are (3) pending or reasonably antici-
pated.'" Citizens_for_Responsibility_&_Ethics_in_Washington_(CREW)_v._U.S._
Dep't_of_Justice, 746 F.3d 1082, 1096 (D.C. Cir. 2014). The Court of Appeals
for the District of Columbia has instructed that exemption 7(A) "is temporal
in nature" and that "[t]he proceeding must remain pending at the time our
decision, not only at the time of the initial FOIA request;" consequently,
an agency's reliance on the exemption **may become outdated when the proceeding
at issue comes to a close.**" Id. @ 1097. (emphasis added).

Based on FOIA case law, the Defendant's burden for withholding the re-
quested documents is multi-layered. First the Defendant's must prove that the
withheld records were compiled for law enforcement purposes "before ...
withhold[ing] requested documents on the basis of any of [this exemption's]
subparts." Maydak_v._U.S._Dep't_of_Justice, 254 F.Supp. 2d 23, 38 (D.D.C. 2003).

For purposes of the instant complaint, Plaintiff does not contest the
fact that ATF is a criminal enforcement agency and that the withheld records
pertain to an investigation conducted by ATF in conjuction with the Baltimore
City Police Department. See Joint Appendix @ "C."

Although the Defendant's have satisfied and cleared the first hurdle,
the said records or information compiled for law enforcement purposes can
only be shielded from disclosure to the extent that their production could
reasonably be expected to interfere with enforcement proceedings, see 5 U.S.C.
§ 552(b)(7)(A), and to justify withholding documents under this provision, the
Defendant's must demonstrate that disclosure could reasonably be expected to
interfere with enforcement proceedings **that are pending or reasonably anticipated.**
CREW, supra @ 1096. (emphasis added). In other words, if the said enforcement

proceedings are not pending or reasonably anticipated, disclosure is warranted in this matter. See Kidder v. FBI, 517 F. Supp. 2d 17, 28 (D.D.C. 2007)("EXemption 7(A) 'does not authorize automatic or wholesale withholding of records or information simply because the material is related to an enforcement proceeding' ... Defendant 'must show, by more than [a] conclusory statement, how the particular kinds of investigatory records requested would interfere with a **pending** enforcement proceeding.'"). (emphasis added).

**(ii) The enforcement proceedings are not pending and could not logically or plausibly be deemed to be reasonably anticipated in light of the fact that Plaintiff (and all co-defendant's) have been prosecuted, convicted, sentenced and convictions deemed final**

In 2006, Plaintiff (and several co-defendant's) were arrested and indicted in the United States District Court for the Northern District of Maryland on a number of charges, including three counts of Possession of a Firearm in Futherance of a Drug Trafficking Crime Resulting in Death, in violation of 18 U.S.C. § 924(j), for the murders of Kenyatta Harris, Angelo Stringfellow, and Torrence Johnson. See United States of America v. Jermaine Bell, Case No. RDB-06-0179; U.S. v. Sean Sterling, Case No. RDB-06-0179; U.S. v. Roosevelt Spann Jr., Case No. RDB-06-0179; U.S. v. Andre Brown, Case No. RDB-06-0179.

In 2008, Plaintiff (and co-defendants mentioned supra) were all convicted and sentenced for the murders of the said individuals with Plaintiff receiving a sentence of 360 imprisonment.

In light of the fact that Plaintiff was prosecuted, convicted, and sentenced (in regards to these enforcement proceedings) the Defendant's reliance

-6-

on exemption 7(A) is inapplicable and simply not logical or plausible.
See Judicial_Watch_Inc._v._U.S._Dep't_of_Defense, 715 F.3d 937 941 (D.
C. Cir. 2013)("Ultimately, an agency's justification for invoking a
FOIA exemption is sufficient if it appears 'logical' or 'plausible'").

The Defendant's position to sustain these enforcement proceedings
as "still open and ongoing," Plaintiff can only assume that the Defen-
dant's are advancing the argument that Plaintiff's conviction is perhaps
not final or that the (allegedly) ongoing investigation involves not only
Plaintiff but other suspects who might face charges or possibly the re-
velation or interference of witnesses. However, the record in the case
at bar would belie any of these contentions.

It is undisputed that a conviction is final "when [the Supreme Court]
affirms a conviction on the merits on direct reveiew or denies a petition
for writ of certiorari, or when the time for filing a certiorari petition
expires." Clay_v._United_States, 537 U.S. 522, 527 (2003); see also Supreme
Court Rule 13(1).

On January 4, 2010, Plaintiff's convcition and sentence was affirmed
by the United States Court of Appeals for the Fourt Circuit. See United
States_v._Bell, 359 Fed.Appx. 442 (4th Cir. 2010). Subsequently, Plaintiff's
petition for Writ of Certiorari was denied by the U.S. Supreme Court on
May 3, 2010. See Bell_v._United_States, 130 S.Ct. 2423 (2010). Moreover,
Plaintiff's motion for collateral relief from sentence pursuant to 28 U.S.C.
§ 2255 was denied on June 11, 2012. See Bell_v._United_States, 2012 U.S. Dist.
LEXIS 80790 (D.Md. 2012).

It is widely acknowledged by the courts that when a requestor's con-
viction is final, exemption (b)(7)(A) is inapplicable. Kansi_v._U.S._Dep't

-7-

of Justice, 11 F. Supp. 2d 42, 44 (D.D.C 1998)(" ... 7(A)exemption ...
exists at least until plaintiff's conviction is final."); Kidder, supra,
517 F. Supp. 2d @ 27-28 (a pending appeal of a criminal conviction
qualifies as a pending or prospective law enforcement proceeding for
purposes of exemption 7(A) ...."); CREW, supra, 746 F.3d @1097 (finding
no justification for withholding information under exemption 7(A) where
third parties' sentencing hearings and appeals were no longer pending or
reasonably anticipated.).

   With any argument that these enforcement proceedings are pending
refuted, it is additionally highly unfathomable that any enforcement
proceedings are reasonably anticipated, or that disclosure would interfere
with an enforcement proceeding, See North v. Walsh, 881 F.2d 1088,1097
(D.C. Cir. 1989)(Exemption 7(A) does not authorize automatic or wholesale
withholding of records or information simply because the material is re-
lated to an enforcement proceeding. Rather, an agency seeking to shield
records or information behind exemption 7(A) must show that disclosure
could reasonably be expected perceptibly to **interfere** with an enforcement
proceeding.) (emphasis in original)(citation omitted). This is so based on
the record and trial testimony by cooperating witnesses who gave detailed
descriptions of the murders of the said individuals, including motive, times,
locations, and who actually was the gunmen. See Bell v. United States, 2012
U.S. Dist. LEXIS 80790 (D.Md. 2012)

> "For some period of time between 1996 and 2001, [Jermaime Bell] led a
> drug distribution organization known as 'R-N-G,' which operated
> primarily out of Baltimore City. In 2001, [Bell] became embroiled

-8-

in a territorial dispute with a rival organization led by Samuel Garrett. As a result, [Bell] issued contracts for the murders of several individuals, including Angelo Stringfellow, who was shot and killed outside of a Baltimore City club on June 26, 2001."

Id.; See also Sean Sterling v. United States, 2013 U.S. Dist. LEXIS 21032 (D.Md. 2013)

"On May 28, 2001, in Baltimore, Maryland, [Sean Sterling] drove Perry Austin, William DeShields, and Corey Smith in his Nissan Pathfinder to find Kenyatta Harris. A drug organization led by Jermaine Bell had a put a $10,000 contract out for the murder of Harris, who was a member of a rival drug organization. [Sterling] found Harris driving and followed him until he stopped on the 1600 block of Thomas Avenue. Austin and DeShields got out of the car after retrieving two guns which were hidden in the sunroof of [Sterling's] Pathfinder. After [Sterling] drove away from the scene, Austin and DeShields shot and killed Harris, and then returned to [Sterling's] car around the block where they stored the guns in the sunroof before leaving. [Sterling] and Corey Smith collected the $10,000 from Bell, which they split with Austin and DeShields."

      *        *        *        *        *        *        *

"On June 26, 2001, [Sterling] drove the same group of individuals- Austin, DeShields, and Corey Smith- to find Angelo Stringfellow, for whose death Bell had placed a $25,000 contract. The men found Stringfellow at a sham drug deal Corey Smith had set up, and DeShields left [Sterling's] car with a gun secured from the Pathfinder's sunroof. Although DeShields had planned on shooting Stringfellow, he returned to the Pathfinder without doing so. [Sterling] drove the group away, later picking Lindwood Smith. Using a tip, they found Stringfellow sitting in his car by a club. [Sterling] parked around the corner, while [Andre] Brown and DeShields took two guns from the sunroof, approached Stringfellow's car, and began shooting at him from opposite sides. Stringfellow was killed ... Brown and DeShields returned to [Sterling's] car, put the guns in the sunroof, and [Sterling] drove away. The next day, [Sterling] drove Corey Smith and Brown to collect the murder fee from Bell, which was again split among the group.

    *        *        *        *        *        *        *

"[Sterling] remained connected to the murder weapons in the period between the murders. [Sterling] ... used his Pathfinder to transport Brown to the Hanover Street Bridge in South Baltimore, where at least one of the guns was thrown into the water."

Id. See also Roosevelt Spann Jr. v. United States, 2011 U.S. Dist. LEXIS
45672 (D.Md. 2011)

> "Jermaine Bell was the leader of a drug organization known as
> 'R-N-G,' which operated in the vicinity of Reisterstown Road
> and Gwynn Falls Parkway in Baltimore, Maryland. Bell's organ-
> ization distributed heroin as well as cocaine and crack cocaine.
> In 2001,, Bell became involved in a dispute over drug turf with
> a rival drug organization run by Samuel Garrett. Bell issued
> contracts for the murders of Garrett and several of his associates,
> including Torrence Johnson. The contract price for the murder of
> Johnson was $10,000. Corey Smith and Solothal Thomas brokered
> this contract. On November 8, 2001, Solothal Thomas, Danta Thomas,
> Corey Smith, James Moore, and Spann went to the Safeway on North
> Charles Street where Johnson worked. Solothal Thomas gave Moore a
> .40 Caliber handgun and directed Moore to kill Johnson. Spann was
> to serve as a getaway driver using a stolen motorcycle. As Johnson
> and a coworker walked down Charles Street toward a bus stop, Moore
> shot and killed Johnson. Moore and Spann then attempted to leave on
> the motorcycle, but it would not start. They instead ran back to
> Spann's house, where they met up with Solothal Thomas, Danta Thomas,
> and Corey Smith.

Id.

In light of the facts cited supra, and based on the entire record
of the enforcement proceedings in the case sub judice, the Defendant's
argument that the investigation related to a homicide is still open and
ongoing, is simply not 'logical' or 'plausible.' Judicial Watch Inc.,
715 F.3d @ 941.[1/]

------------------------------

1. Case law illustrates the type of "interference" at which section 7(A)
is directed. North, supra 881 F.2d @ 1097. In the seminal case, NLRB
v. Robbins Tire & Rubber Co., supra, the Supreme Court held that exemption
7(A) permitted the National Labor Relations Board to withhold potential
witnesses' statements collected during an unfair labor pratice investigation
at least until completion of the Board's hearing. Id. The Court feared
that early disclosure might lead to imtimidation of witnesses or make
witnesses reluctant to testify, and would give a suspected violator of
the National Labor Relations Act early access to the NLRB's case against
him, allowing him to "construct defenses which would permit violations to
go unrememdied. Similarly, in Alyeska Pipeline Service Co. v. United States
EPA, 856 F.2d 309 (D.C. Cir. 1988), the Court held that Exemption 7(A)
(continued)

Finally, the Defendant's have not offered any justification to show that any responsive information cannot be reasonably segregated because it is "inextricably intertwined with" exempt information. Mead Data Cent. Inc., supra, 566 F.2d @ 260.

Accordingly, the Defendant's erred in invoking Exemption 7(A) as grounds for its denial of Plaintiff's FOIA request where the Plaintiff

-------------------------

1. (continued) permitted the EPA to withhold documents related to an on-going investigation from the investigation's target because disclosure would reveal the scope and direction of the investigation and could allow the target to destroy or alter evidence, fabricate fradulent alibis, and intimidate witnesses. Id. @ 312-13;

Exemption 7(A), as these cases indicate, is designed to block the disclosure of information that will genuinely harm the government's case in an enforcement or impede an investigation. North, supra, 881 F.2d @ 1098. As stated supra, and not to be redundant, in the case at bar, the enforcement proceedings have been concluded, the murders solved, convictions of Plaintiff and all codefendant's deemed final.

It is therefore not logical or plausible that disclosure will impede or harm an investigation that is concluded. With respect to the revelation of cooperating witness identity (i.e., William DeShields, Lindwood Smith, Corey Smith, Tyree Stewart and Perry Austin), there identities are readily apparent from the record and trial testimony. See also Kanter v. IRS, 433 F.Supp. 812 (N.D. Ill. 1977)(Denying government's motion for summary judgment under exemption 7(A) holding that the government had not carried its burden of showing some specific harm to the criminal trial, such as **the revelation of prospective witnesses, confidential informants, or the government's evidence or strategy**). Id. @ 822 n. 18, 824. (emphasis added).

has been prosecuted, convicted, sentenced, and conviction deemed final.
See Dugan v. Dep't of Justice, 82 F. Supp. 3d 485 (D.D.C. 2015)(holding
that ATF was not entitled to summary judgment under exemption 7(A) because
Plaintiff had already been prosecuted, convicted, and sentenced.).

## CONCLUSION

For the foregoing reasons the Court should order the Defendant's
to disclose all information in Plaintiff's FOIA request and grant any
other such relief deemed appropriate under the circumstances.[2/]


Dated: June 6, 2017                    Respectfully Submitted,

                                       /s/ Jermaine Bell
                                       Jermaine Bell
                                       Reg.No. 33031-037
                                       FCI SCHUYLKILL
                                       P.O. BOX 759
                                       Minersville, PA 17954


-------------------------------------------

2. Plaintiff resepctfully request that this Court treat the instant foot-
note as a request/Motion For Extension of Time of 60 Extra Days to File
any Responsive Pleadings. Plaintiff anticipates that the Defendant's
will seek summary judgment (which Plaintiff will respectfully oppose).
Plaintiff is currently housed in "SHU" on 23 hour lockdown statuts and
has limited access to the institution law library (once or twice a month).
Plaintiff is currently awaiting transfer to another FBOP facility, desti-
nation and state unknown. In light of these circumstances Plaintiff re-
spectfully seeks an extension of time of an extra 60 days to file any
future responsive pleadings.

## CERTIFICATE OF SERVICE

Plaintiff, Jermaine Bell, pro se, hereby certify that I mailed first class postage a true and correct copy of the foregoing Complaint to the following party:

Bureau of Alcohol, Tobacco, and Firearms
Dep't of Justice
Suite 1E360
99 New York Ave., N.E.
Washington, DC 20226

_June 6, 2017_
Date

_Jermaine Bell_
Name

JOINT APPENDIX A

PLAINTIFF'S APPEAL TO OIP

Jermaine Bell
Reg.No. #33031-037
FCI SCHUYLKILL
P.O. BOX 759
Minersville, PA 17954


November 25, 2016


░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░

Director, Office of Information Policy
U.S. Dep't of Justice, Suite 11050
1425 New York Avenue, NW
Washington, DC 20530

**RE: Freedom of Information Act Appeal 2016-0976**

Factual Background

On October 24, 2016, the Bureau of Alcohol, Tobacco, Firearms
and Explosives ("ATF") denied the Requestor's FOIA request asserting
that the "investigation relating to a homicide is still open," and
therefore is exempt pursuant to 5 U.S.C. § 552(b)(7)(A) because it
concerns an ongoing investigation. Id. The following facts and law
are proffered in support of the instant appeal.

On August 21, 2016, Requestor filed a FOIA request to the ATF
seeking all evidence and basically the entire case file in regards to:

-November 26, 2001, homicide of Torrence Johnson in Baltimore,
Md.

-June 26, 2001, homicide of Angelo Stringfellow in Baltimore, Md.

-May 28, 2001, homicide of Kenyatta Harris in Baltimore, Md.

-pertaining to 1998 investigation relating to Kenyatta Harris
stemming from a homicide of Damien Barralle.

-pertaining to 302 reports relating to task force that involved
any/all Baltimore City police officers.

Id. FOIA request. As noted above, the ATF has cited exemption (7)(A)

-1-

because it allegedly concerns an ongoing investigation. The Requestor would argue that based upon the facts of this case, this exemption is simply not plausible under FOIA case law.

## Applicable FOIA Law

"[The ATF's] disclosure obligation is triggered by its receipt of a request that 'reasonably describes' the records sought...." 5 USC § 552(a)(3)(A); See Citizens for Responsibility and Ethics in Washington v. FEC, 711 F.3d 180, 185, n.3 (D.C. Cir 2013)("Of course, the duties that FOIA imposes on agencies...apply only once an agency has received a proper FOIA request."). (citation ommitted). FOIA mandates a "strong presumption in favor of disclosure," U.S. Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976). (emphasis added). As such, "'the burden is on the agency' to show that the requested material" need not be produced because a particular FOIA exemption protects the material from disclosure. Petroleum Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1435 (D.C. Cir 1992)(quoting 5 USC § 552(a)(4)(B)). (emphasis added). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" Judicial Watch, Inc. v. U.S. Dep't of Defense, 715 F.3d 937, 941 (D.C. Cir. 2013).

## Exemption (b)(7)(A)

FOIA exemption 7(A) shields from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information [] could reasonably be expected to interfere with enforcement proceedings." 5 USC § 552(b)(7)(A). To justify withholding documents under this exemption, "the [ATF] must [] demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'" Citizens for Responsibility & Ethics in Washington (CREW) v. U.S. Dep't of Justice, 746 F.3d 1082, 1096 (D.C. Cir. 2014). (emphasis added).

In the case at bar there are two questions before the OIP. Question

-2-

one can be phrased as "is the said investigation pending?" And if so
(question two) "how would the investigatory records interfere with
the **pending** enforcement proceedings?" See Kidder v. FBI, 517 F.Supp.
2d 17, 28 (D.D.C. 2007)([ATF] **must show, by more than [a] conclusory
statement, how the particular kinds of investigatory records requested
would interfere with a** pending **enforcement proceeding.**) (emphasis added).

The Requestor would make the argument that the investigation in
the case sub judice is no longer pending and therefore exemption (b)(7)
(A) is inapplicable.

The Requestor's FOIA request seeks basically the investigatory
files with respect to the homicides of Torrence Johnson, Angelo String-
fellow, and Kenyatta harris. In 2006, the Requestor and several co-defen-
dants were all indicted in federal court in connection with the murders
of the said individuals. See United States v. Jermaine Bell, Case No. 06-
0179; U.S. v. Sean Sterling, Case No. 06-0179; U.S. v. Roosevelt Spann Jr.,
Case No. 06-0179; U.S. v. Andre Brown, Case No. 06-0179.

The Requestor and all of his co-defendants were all convicted of
the murders of the said individuals. Trial testimony by cooperating wit-
nesses gave detailed descriptions of the murders of the said individuals,
including motive, times, locations and who actually pulled the trigger.
See Sean Sterling  v. U.S., 2013 U.S. Dist. LEXIS 21032; Jermaine Bell v.
U.S., 2012 U.S. Dist. LEXIS 80790; Roosevelt Spann Jr. v. U.S., 2011 U.S.
Dist. LEXIS 45672; Andre Brown v. U.S., 2010 U.S. Dist. LEXIS 78624.

In light of the facts cited above the ATF's argument that the inves-
tigation related to a homicide is still open is simply not logical or
plausible, Judicial Watch, Inc. 715 F.3d @ 941, when the requestor and all
his co-defendants have been prosecuted, convicted and sentenced for the
murders of the said individuals. See Dugan v. Dep't of Justice, 82 F.Supp.
3d 485 (D.D.C. 2015)(holding that ATF was not entitled to summary judgment
under exemption 7(A) because plaintiff had already been prosecuted, convicted,
and s entenced.).

-3-

It is also undisputed in cases such as this where the FOIA requestor's conviction is final, exemption (b)(7)(A) is inapplicable. Kidder 517 F.Supp.2d @ 27-28 ("A pending appeal of a criminal conviction qualifies as a pending or prospective law enforcement proceeding for purposes of exemption 7(A)...."); Kansi v. U.S. Dep't of Justice, 11 F.Supp. 2d 42, 44 (D.D.C. 1998)("...7(A) exemption....exists at least until palintiff's conviction is final."); CREW, supra 746 F.3d @ 1097 (finding no justification for withholding information under exemption 7(A) where third parties' sentencing hearing and appeals were no longer pending or reasonably anticipated.); See also Dugan, supra @ 485.[1]/

Because the disclosure of the information that the Requestor seeks cannot interfere with the enforcement proceedings already concluded, the Requestor respectfully request that the OIP issue an order reversing the ATF's denial of the Requestor's FOIA request.

Respectfully Submitted,

Dated:_____

/s/_____
Jermaine Bell
Reg.No.#33031-037
FCI SCHUYLKILL
P.O. BOX 759
Minersville, PA 17954

_____

1. It should be noted that Requestor has also filed FOIA request to the Baltimore City Police Department and the DEA and both agencies also cited exemptions but ultimately released the documents the requestor seeked after the requestor appealed.

JOINT APPENDIX B

OIP DECISION DENYING APPEAL



**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

**January 30, 2017**

Mr. Jermaine Bell
Register No. 33031-037
Federal Correctional Institution            Re:     Appeal No. DOJ-AP-2017-001282
Post Office Box 759                                  Request No. 2016-0976
Minersville, PA  17954                              CDT:MTC

**VIA:  U.S. Mail**

Dear Mr. Bell:

        You appealed from the action of the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF) on your Freedom of Information Act request for access to records concerning
yourself.

        After carefully considering your appeal, I am affirming ATF's action on your request.  In
order to provide you with the greatest possible access to responsive records, your request was
reviewed under both the Privacy Act of 1974 and the FOIA.  I have determined that the records
responsive to your request are exempt from the access provision of the Privacy Act.  See
5 U.S.C. § 552a(j)(2); see also 28 C.F.R. § 16.106 (2016).  For this reason, I have reviewed your
appeal under the FOIA.

        The FOIA provides for disclosure of many agency records.  At the same time, Congress
included in the FOIA nine exemptions from disclosure that provide protection for important
interests such as personal privacy, privileged communications, and certain law enforcement
activities.  ATF properly withheld this information in full because it is protected from disclosure
under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(A) and it is reasonably foreseeable that
disclosure of this information would harm the interests protected by this provision.  This
provision concerns records or information compiled for law enforcement purposes the release of
which could reasonably be expected to interfere with enforcement proceedings.

        Please be advised that this Office's decision was made only after a full review of this
matter.  Your appeal was assigned to an attorney with this Office who thoroughly reviewed and
analyzed your appeal, your underlying request, and the action of ATF in response to your
request.  If you have any questions regarding the action this Office has taken on your appeal, you
may contact this Office's FOIA Public Liaison for your appeal.  Specifically, you may speak with
the undersigned agency official by calling (202) 514-3642.

- 2 -

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

X **ctroiani**
Digitally signed by ctroiani
DN cn=ctroiani,
email=Christina.Troiani@usdoj.go
v, o=USDOJ
Date 2017.01.30 09 40 38 -05'00'

Christina D Troiani, Associate Chief, for
Sean O'Neill, Chief, Administrative Appeals Staff

JOINT APPENDIX C

CONFORMATION OF ATF ENFORCEMENT PROCEEDINGS BY U.S. ATTORNEY
PAGE 33 LINE 16

P. 33

```
 1              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
 2                   NORTHERN DIVISION

 3   UNITED STATES OF AMERICA  Criminal No. RDB-06-0179

 4               v.

 5   JERMAINE BELL              Baltimore, Maryland

 6         AND                  May 15, 2008

 7   ROOSEVELT SPANN,          9:30 a.m.

 8         Defendants.

 9   -------------------------------------/

10          TRANSCRIPT OF MOTIONS HEARING
      BEFORE THE HONORABLE RICHARD D. BENNETT
11           UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES.

14   For the Government:  United States Attorney's Office
                        By: GREGORY WELSH, ESQUIRE
15                          JASON WEINSTEIN, ESQUIRE
                        36 South Charles Street
16                      Fourth Floor
                        Baltimore, Maryland 21201
17

18   For the Defendants:  Brown Goldstein and Levy LLP
                         By: DANIEL GOLDSTEIN, ESQUIRE
19                       120 East Baltimore Street
                         Suite 1700
20                       Balltimore, Maryland 21202

21                       Davis and Davis
                         By: CHRISTOPHER DAVIS, ESQUIRE
22                       514 10th Street, NW
                         Ninth Floor
23                       Washington, D.C. 20004

24

25
```

1

1   office to the Redrum and/or back again, the homicide files for

2   Kenyatta Harris killing was misplaced.

3          THE COURT:   All right.   We'll address that in a moment.

4   I want to stay focused just on --

5          MR. WELSH:   Right.

6          THE COURT:   -- the first of the three topics on Brady

7   in terms of just the non-presence of Mr. Bell and essentially the

8   negative involvement or what Mr. Goldstein refers to as negative

9   evidence.

10          MR. WELSH:   Getting --

11          THE COURT:   We'll deal with Kenyatta Harris in a

12   moment.

13          MR. WELSH:   -- to the third task force just so it's

14   clear

15          THE COURT:   All right.

16          MR. WELSH:   The task force investigation that directly

17   led to the instant indictment is an ATF Task Force investigation.

18   That involves, of course, ATF agents and a third Baltimore Police

19   Department Task Force officer.   This investigation began with the

20   Tyree Stewart marijuana organization which was a case that Judge

21   Blake heard and then this investigation spun out of information

22   that we got from Tyree Stewart and Corey Smith, two of the

23   defendants in that case, who provided information about a whole

24   series of homicides including ones involving Mr. Bell and also

25   homicides involving the infamous Solethal Thomas also known as